Good morning, Your Honors. May it please the Court, my name is Jacob Hafter and I represent Dr. Kevin Buckwalter. At the onset, I'd like to respectfully request to reserve five minutes, at least, for a rebuttal. This District Court's action in this case leads me to ask a very responsible for providing that to you, tramples all over it, and they have immunity. I understand the need for judicial immunity. However, this is not a case of a judicial action. The alleged judicial acts in this case was a telephonic board meeting where members of the board, on a phone call, voted on an agendized item at the advice of their counsel. As a matter of fact, it was their counsel that was the one that was presenting the evidence. There was no further testimony provided. There was no cross-examination of witnesses and there was no adversarial process. It was a summary suspension of part of a physician's license which turned out to be the destruction of his career. But you're not contesting that, are you? No. And that brings up a fantastic point that we tried very difficultly to raise in the briefs, that there's really two issues here. There's whether or not Dr. Buckwalter was an imminent danger to himself or others, and there's the other question of whether or not he committed the underlying four malpractice cases and violated the statutory act thereof. You see, originally, summary suspensions were always intended to be related to substance abuse or mental health. God forbid a physician's having a heart attack or a stroke right then and there, you needed the ability to tag him, pull him out of the game and put somebody else in, where the issue was his dangerous or incompetence because of that intervening event. What's occurred recently is a trend to use summary suspensions as an imminent disciplinary effect, not because of an intervening event, but because of the underlying allegations. Here for example, we have four alleged incidences of malpractice over the course of five years. And the Board is saying that that, in and of itself, is why Dr. Buckwalter was an imminent danger to himself or others, under the basis that the last alleged act of malpractice was eight months prior to the suspension. And we believe that in that case, this Court must affirm the fact that Dr. Buckwalter was entitled to receive hearing on the issue, first and foremost, of whether or not he was an imminent danger. Well, so let me back you up just a little bit. Well, let's take it right there. So he they immediately, they suspended him and they made the suspension effective immediately. And then under the statute, he had a right to a prompt hearing. The statute was kind of vague at that time, but he had a right to a prompt hearing. And they set the hearing down for about four months later, in, I think it was in March. They set a hearing, Your Honor, and it was arbitrarily set without interaction of Dr. Buckwalter or counsel. Now, putting aside for a moment that approximate four-month period, just, I don't want to deal with that for a moment. But ultimately, they stipulated to continue that hearing, correct? Because they were going to work out a deal. Your Honor, the problem was twofold. First of all, throughout this entire time, the Board was saying to counsel and to Dr. Buckwalter, there's more coming in. We've got more. There's more alleged cases. There's more complaints. And so we could either do this in piecemeal or we could bring all these together. Again, this was under the underlying fact that they were alleging malpractice. It wasn't his imminent danger. The problem that we have is he should have first and foremost had a chance to be heard on whether or not he was in imminent danger, part and parcel from the argument that he committed the malpractice. And the four months or the — but we couldn't argue that. We've said in a case called Mishler that the members of the Board of medical examiners of the State of Nevada are entitled to absolute immunity. The only thing that's different about this case is it deals with the summary suspension at the outset. Your Honor, Mishler asked that a court look at the individual circumstances of every case to apply the functional equivalent test to determine whether or not the actions alleged gave rise to a judicial or quasi-judicial act. Here, the court, in a case like Mishler, the Board has absolute immunity in all of their official acts and refused to look at what the Board did. So the statute gives them this authority, though, to act in this way, correct? And we're not challenging the summary suspension, Your Honor. We're challenging the fact that he never had a chance to clear his name on the imminent danger. He stipulated to the postponement. Whatever reason he did, he stipulated to it, right? He stipulated to the postponement of the underlying facts for the ultimate issues at hand. He was never given the opportunity to address the summary suspension nature. Well, why didn't he reject the stipulation? Because they were withholding evidence, Your Honor. Because they weren't coming forward with all of the claims that were going to be used at the hearing. He had no choice but to agree to the stipulation. And also, it must be noted that the we're dealing here with the judge, the prosecutor, and the executioner, all in the same party. You have to give them deference in some respect because you want the ability to ultimately try to work it out with them. You can't be so aggressive. So he stipulates to postponement. When did he ever withdraw that? I can tell you, Your Honor, that when I came in about a year later, we were we filed an answer. That was one of the first things we did to the complaint. And we started along the process of, please tell us what other facts you're alleging. Please tell us what other cases are involved. Please amend the complaint if possible. Let's move forward. And we got silence. We got, well, we're still looking into it. We'll get back to you. And then there was this attempt to settle it. And we negotiated three of them. And at some point, we said, we can't keep engaging in this settlement of discussions because that's what you were asking. We need to move on with the due process here. We asked several times, why is there an imminent danger? And we were just not told. We weren't allowed to address that issue. Let me, what are you really, what are you asking for now? Because I understand from the briefs that the doctor has his full license back. There's no longer any    and there's an opportunity for a full hearing. I understand it still. Your Honor, he's never been able to clear his name whether or not he was an imminent danger for the three years. Sir, there's a hearing on the merits of the underlying. On the underlying allegations of malpractice. Why doesn't that just sort of wrap everything up all into one ball of wax, so to speak? Well, because first of all, he has a data bank kit right now that says that he was an imminent danger to self and others. And so while he has his license back, he still has that data bank that claims that he was an imminent danger. And that is the stigma test that this Court's referred to. They made that determination based upon the underlying facts of the charges that they used to revoke his. Which were suspect at best, Your Honor. Well, so, I mean, you go to a hearing and let's say you prove that all that, that they acted improperly. Why doesn't that clear his name? Because, first of all, assuming that they're going to address those issues with the clarity that this Court has just suggested, would be an  It would be nice. Generally, though, when you're dealing with a combination of physicians and lay members, they don't have the ability to address those issues with such clarity. They'll take the underlying allegations of patient A, B, C, and D, but they won't address issues such as, well, were we proper in the summary suspect? Who actually conducts the hearing? The board members? Or do they appoint a hearing officer to conduct the hearing? They have the power to do either, Your Honor. In this case, there is a hearing officer case, Tate v. Board of Medical Examiners, which is pending before this Court. That even if a hearing officer makes recommendations and findings, it doesn't mean that the board's going to adopt, embrace, or understand those. And that's exactly what happened in that case. So, the issue here is we really would like the ability to clear the issue of whether or not he was in imminent danger, and then go and work on the issue of malpractice at a separate date. It seems to me like if the issue is imminent danger, then the board would have to take a look at the allegations. Well, what's the point of having a prompt post-deprivation hearing requirement? Well, just as Judge Noonan was suggesting, it seems that, you know, they gave him a four-month hearing. They could have at any time just said, we're not I'm not going along with this stipulation. The problem is they gave him the four-month hearing, but they didn't tell him all the evidence that would be produced. There was a bailout. There would be other charges brought out at the hearing. And then they said, oh, let's settle this. That raises a number of other, a host of other issues. But once we go into that point, now you're really working as a judicial officer that you have immunity for. My one question, though, was Mishler seems to suggest that, you know, members of the board have qualified, have absolute immunity because they're acting like judicial officers. If they're acting. And, you know, it's kind of analogous to a judge issuing a temporary restraining order. Well, Your Honor, it would be analogous to an ex parte temporary restraining order. And that happens. Which would be, happens few and far between because of their fear. I used to shoot more than my fair share of ex parte  I'm not saying it doesn't, Your Honor. I'm saying what happened here is this wasn't the same. This was a telephonic phone call amongst board members. He was on the call? He was not on the call. He had no notification of the call. And my fear is, why would it have been so difficult to give him notice of this call? I mean, at the very least, why couldn't he have been on it? Why couldn't he have at least known that this was coming? The problem was, was this was not a judicial act. It meets none of the requirements of the Mishler's Functional Equivalent Test. And if you then say, well, he should have brought those issues at the hearing, the due process procedures at hearing, now you're at a hearing, now you've got witnesses in cross-examination, now you've got a judicial act, and you'd be saying to me, well, sorry, they have absolute immunity because at the hearing it was a judicial act. So, you know, we're caught in either direction here. What we're saying is that this summary suspension is not a judicial act. But you're seeking damages against these individual board members, correct? In the alternative, yes, Your Honor. In the alternative, we're also seeking the ability for declaratory and injunctive relief. But that butts up against notions of younger abstention. If the injunctive relief were to stop the proceeding at hand, what if the injunctive relief were to stop a report to a databank, which is what this Court has issued in a sister case, Tate v. Board of Medical Examiners? That's not stopping the underlying state action. Isn't that interfering with the administrative process, though? No. The reporting of the databank is a remedy. It's a repercussion. It's an effect of the process, not the process itself. Couldn't the hearing examiner order or direct that whatever's in his record be expunged or whatever? I guess that's the word. He could. But where's the Constitution? Again, as I started, where's the constitutional due process and the constitutional right in having a prompt post-deprivation hearing if this person has to wait two, four, eight years before he finally gets his post-deprivation hearing? And then he gets his name cleared. Your time is up. Thank you. May it please the Court. My name is Michael Sullivan. I'm here today representing the state of Nevada Board of Medical Examiners and all of the individually named appellees. This is my first time appearing before the Court, and I want to thank you for listening to our argument. As an initial matter, I think what's important in this case is what Judge Noonan pointed out. When my clients received the complaints and had an investigation and had this ex parte decision, they believed in good faith there was an emergency situation, and to protect the public from further harm, that Dr. Buckwalter's license needed to be suspended. And, of course, when you suspend somebody's license, they have a constitutional right to do so. They have a constitutional right to due process. And in this 120-day period, not Mr. Hafter, but his co-counsel, the brother of Dr. Buckwalter, who is a Nevada attorney who's representing his brother, they do not want to have the hearing. And that's why the stipulation was signed by both parties, represented by counsel, and given to an administrative law judge, Judge Griffin, a retired senior judge who practiced law in Nevada, and everybody put this case on hold so that they could take a stipulation later on that would be acceptable to the full board to see if they could put the matter to rest and to have the doctor take classes and promise not to do this again. And unfortunately, even though both the board and the doctor's attorney brought what everybody thought would be accepted by the board, the board, for whatever its own reasons and its discretion, did not believe that this, quote, plea bargain was good enough or fair enough. And I believe the sticking point might have been having the doctor's name registered in the national database, which obviously is not good for a doctor. So when the board rejected it, the parties went back to the drawing board to try to refashion something, and I agree with my counsel that there may have been other additional charges and everybody wanted to wrap it up in one nice bow and present it and move on so the doctor could practice medicine. Unfortunately, what happened is right up until the moment this 1983 action was filed in Las Vegas, the parties were still negotiating. So the moment that a lawsuit was filed and immediately the same day there was an ex parte application to have an injunction to stop everything, there was a hearing before Judge Dawson and the TRO hearing was heard and the judge said, under the factors of Mishler and Manzur and Olson, the board enjoys absolute immunity. For its members. For its members. And I don't think he necessarily in his writing addressed injunctive or declaratory relief. He said, I am constrained under the Ninth Circuit law 1999 Mishler case that there is absolute immunity for damages for the people that are being sued and secondarily, even assuming what you say is true, if the board was bad acting in bad faith, which of course we do not concede, you still have to deal with the younger abstention doctrine. So we do not have in this particular case, we have in exhibit, we have the exhibit one, the smoking gun document where everybody says we don't want to go to court. We don't want to have any evidence. We want to work this out. That's the most critical fact. But the second fact is that since this lawsuit was filed and by implication never was it withdrawn formally, but now that enough time has passed, this doctor does not have any restrictions on his license so there is a mootness type argument. There is a hearing that is now set on those four cases I believe it's August of this year which will wrap everything up and tidy it up in a bow and yes, there is a procedural mechanism that if there is no harm and the doctor is found not to have done anything wrong, that that national database will be provided that information. From what I understand about federal law, when my client has a suspension they are required under federal law to report it to the database. It doesn't say this doctor is guilty of doing all these horrible things it just says there is a suspension and if the doctor at any time says I want my due process hearing I want to be heard on these four serious charges so that I can have my due process my clients would have been happy to provide that to them instead the parties work together to where we are. Secondly, the district court judge in Las Vegas correctly analyzed the younger abstention doctrine and pointed out that you would have to exhaust all of your administrative remedies before you could even consider coming to federal court and as I read the pleadings here one of the remedies being sought under 1983 is either declaratory relief or injunctive relief at this point there is nothing left to enjoin there is nothing left to declare the way the system is set up and it should work is in August there will be a hearing everyone will be entitled to present their case there will be a decision that decision is then appealable to the district court meaning state district court in Nevada and from there the Nevada Supreme Court until we have run that course the younger abstention doctrine requires the federal courts to wait and see what happens let me ask you this was it 180 days from the time of the suspension to the time the hearing was set? I believe it was 120 days four months wasn't it? I believe it was is that a quote-unquote prompt hearing in this kind of situation? I think it's on a case-by-case basis in a vacuum I noticed that the law has changed and now they say 45 days which seems pretty quick if you're going to suspend somebody's license on grounds that they're an imminent threat to the public you better be prepared to put up your evidence absolutely your honor and I think perhaps that's why the law was changed as I understand in a practical world we live in in today's time if the parties want to have that hearing in the 45 days that's what they do at the time that this all occurred I'm surmising, I do not believe it's in the record that the attorney for Dr. Kevin Buckwalter also Mr. Buckwalter was communicating with my client and saying let's put this on hold and by the time they got around to drafting the stipulation and having it signed off a significant time had passed but at no time was anybody asking to enforce the promptness of it but I agree with you 120 days is a significant period of time unless the court or its members have any further questions I would simply ask that the district court's decision be affirmed on either of the grounds cited by the district court meaning the Younger Abstention Doctrine and or Mishler and its progeny okay thank you a few quick points why they wanted to stipulate to postpone the hearing is a question of fact and there's been differences in each brief and so I think that that remains unsettled it should also be noted that this case was filed not because we wanted to create some issue we had a statute of limitations coming up under 1983 that we had to meet and that's why it was filed where it was and at that point we already had three settlement agreements that were drafted by their counsel and they couldn't push it through so we weren't sure further bad faith isn't a requirement for section 1983 claims and to that end I'd also like to suggest that in Williams v. UMC a district court case in Nevada district court as well as Chudikoff v. UMC which is a case that's made it to this 9th circuit both of those cases have clearly stated that a due process violation is actionable separate and apart from an administrative process and you don't have to exhaust your administrative remedies in order to bring a due process claim and that's exactly what it is Dr. Buckwalter never had a chance to address whether or not he had his due process rights violated with not receiving a prompt post deprivation hearing and that's what we're asking you to declare that his due process rights were violated to simply stand up there and say it's an emergency and therefore we're going to suspend his license I think there has to be a higher level especially when that's what's going on all the time with these boards lately thank you very much it's an honor to be able to argue on this auspicious day before you. Thank you counsel we appreciate your comments and your arguments and the matter is submitted
judges: Fletcher, Noonan, Paez